IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
PATRICIA E. LEWIS,              )
                                )
            Plaintiff,          )       4:09CV3218
                                )
       v.                       )
                                )
MICHAEL J. ASTRUE,              )       MEMORANDUM OPINION
Commissioner of the Social      )
Security Administration,        )
                                )
            Defendant.          )
_____)
```

This matter is before the Court for judicial review of a final decision of the defendant Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). The Commissioner denied plaintiff's application for a period of disability and disability insurance benefits, finding plaintiff was not under a disability at any time from the alleged onset date, October 1, 1999, to the date last insured, December 31, 2004. Upon review, the Court finds the Commissioner's decision is not supported by substantial evidence and should be vacated and remanded for further findings consistent with this memorandum opinion.

## I. BACKGROUND

Plaintiff was born on February 6, 1952 (Tr. 56). She has a high school and registered nurse education and last worked

as a registered nurse on October 1, 1999 (Tr. 20, 60, 593).[1] Plaintiff lives with her husband, and her daughter and two grandsons moved in with plaintiff and her husband in the summer of 2006 (Tr. 79, 593-94).  Plaintiff's date last insured is December 31, 2004 (Tr. 16).

**A. Medical records**

In October 1998, plaintiff saw Lisa Peterson, M.D., who noted diagnoses of depression, fibromyalgia syndrome, and migraine headaches (Tr. 215-17).  In February 2000, plaintiff began treating with Richard Thompson, M.D., after several years' absence from Dr. Thompson's practice (Tr. 342-43).  Dr. Thompson diagnosed plaintiff with fibromyalgia and vascular migraine headaches (Tr. 343).  Dr. Thompson's medical records demonstrate that plaintiff saw Dr. Thompson fairly regularly for reexamination and treatment of several medical conditions. During the course of treatment, Dr. Thompson reported diagnoses in addition to fibromyalgia and headaches, including depression, anxiety, and chronic fatigue (Tr. 405-406).  Dr. Thompson prescribed and renewed several medications for plaintiff's conditions and referred plaintiff to physical therapy in 2000 and 2001 (Tr. 234, 247-48).  Plaintiff responded well to physical

---

[1] Some references in the record identify October 1, 1999, as the alleged onset date and the date plaintiff last worked; other references in the record identify this date as October 7, 1999.

-2-

therapy treatment and was released from the physical therapy clinic's active patient file (Tr. 234-36, 247-48).

At the request of the state Disability Determination Services ("DDS"), Scott McPherson, M.D., conducted a consultative physical examination of the plaintiff on August 10, 2004 (Tr. 349-354).  Dr. McPherson reported that plaintiff had mild tenderness over the entire anterior abdomen with trigger points noted across the bilateral inguinal regions; plaintiff had trigger points in the suboccipital regions bilaterally, across the tops of both shoulders, and on the medial aspects of both scapulae; and plaintiff had multiple extremely tender spots across the posterior lumbar region at the waist (Tr. 352).  Dr. McPherson noted diagnoses of hypertension, fibromyalgia, restless leg syndrome, sleep disorder, chronic anxiety disorder, chronic depression, tenia corporis, chronic leg edema, chronic headaches, history of endometriosis, and chronic sinusitis (Tr. 353).  Dr. McPherson also made the following comments:

> This claimant does have multiple somatic disorders.  She has multiple complaints.  The chronic pain is consistent with fibromyalgia and it is understandable that chronic pain can cause a great deal of difficulty with concentration. . . . Physically, her range of motion was acceptable in all areas, though it is clear that she has somatic tenderness and pain.  She is being treated by a physician and has multiple medications, which

>               appear to have caused her to reach
>               maximum benefit at this time.
>               Further evaluation of the severity
>               of depression and anxiety may also
>               contribute to understanding of her
>               inability to work at this time as
>               well.

(Tr. 354).

At the request of the state DDS, William Stone, Ph.D., conducted a consultative mental examination of the plaintiff on September 9, 2004 (Tr. 356-60).  Dr. Stone reported that plaintiff's memory appeared intact, and he estimated her intellectual functioning to be in at least the high average range (Tr. 359).  Dr. Stone stated that diagnoses of Dysthymic Disorder and Panic Attacks were indicated, and he assigned a Global Assessment of Functioning ("GAF") score of 65-74[2] (Tr. 360).  Dr. Stone concluded that plaintiff is able to sustain concentration and attention, capable of understanding and remembering short and simple instructions and complex and complicated instructions, capable of relating appropriately to co-workers and supervisors, and capable of adapting to ordinary day to day changes in her environment and managing her own funds (Tr. 360).

---

[2] The GAF scale is a tool used to rate a patient's level of functioning with regard to psychological, social, and occupational areas. *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. rev. 2000).  A score of 71-80 indicates the patient has transient symptoms or a "slight" impairment.  *Id.*  A score of 61-70 indicates a patient has "mild" symptoms but is "generally functioning pretty well."  *Id.*  A score between 51-60 indicates "moderate" symptoms.  *Id.*

On September 27, 2004, a DDS psychologist completed a psychiatric review based on a review of plaintiff's file (Tr. 364-77). The DDS psychologist indicated plaintiff had the following medically determinable impairments: Dysthymia, in partial remission, and Panic Attacks (Tr. 364-77). The DDS psychologist noted that plaintiff maintained a fairly routine schedule of daily activities, her limitations on her reported daily activities were related to her pain and fibromyalgia, and her anxiety attacks were well controlled with medication (Tr. 376). The DDS consultant concluded that plaintiff did not appear to have a severe mental impairment that would prevent her from working (Tr. 376). On February 1, 2005, Linda Schmechel, Ph.D., a DDS psychologist, reviewed plaintiff's file and affirmed the September 27, 2004, mental assessment (Tr. 386).

On September 27, 2004, Allen Hohensee, M.D., a DDS physician, completed a physical RFC assessment based on a review of plaintiff's file (Tr. 378-85). Dr. Hohensee reported a primary diagnosis of fibromyalgia, a secondary diagnosis of hypertension, and other alleged impairments of restless leg syndrome and sleep disorder (Tr. 378). Dr. Hohensee found plaintiff could occasionally lift and/or carry 20 pounds, frequently lift 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday (Tr. 379). Dr. Hohensee found plaintiff had some

-5-

postural and environmental limitations and no manipulative, visual, or communicative limitations (Tr. 380-82).  Dr. Hohensee indicated that the basis of his conclusions with respect to plaintiff's exertional limitations were explained on page 8 of his report, but page 8 is blank except for his signature and date (Tr. 379, 385).  In analyzing plaintiff's symptoms, Dr. Hohensee noted that plaintiff had a history of headaches, fibromyalgia, restless leg syndrome, and a mood disorder, and a recent consultative examination confirmed that she had trigger points, extremely tender spots in certain areas, and multiple somatic complaints consistent with fibromyalgia (Tr. 383).  Dr. Hohensee concluded that plaintiff had fibromyalgia, which would provide some support for her allegations and symptoms, but her statements with regard to her limitations were only "partially credible." (Tr. 383).  Dr. Hohensee partially discredited plaintiff based on her daily activities and the fact that her allegation of poor memory was not supported by the record (Tr. 383).  On February 1, 2005, Tom Chael, M.D., a DDS physician, reviewed plaintiff's file and affirmed Dr. Hohensee's physical assessment (Tr. 387).

At the request of plaintiff's attorney, plaintiff's treating physician, Dr. Thompson, wrote a letter dated December 8, 2006, to provide an update on plaintiff's conditions (Tr. 404).  The letter states plaintiff is seen in Dr. Thompson's clinic on a regular basis, "and although she remains mostly

stable, the patient states that she continues to experience problems with chronic joint pain, fatigue, and headaches." (Tr. 404). The letter also states:

> Because of the patient's clinical picture, along with the fact that fibromyalgia is a chronic condition, I believe that based on her symptoms it would [] be difficult for her to maintain a continual job that would require an 8-hour per day, 5-days per week. However, she might be able to function in a work setting that would allow a great deal of flexibility, in terms of hours worked and required tasks, along with accommodations made for patient's changeable symptoms.

(Tr. 404).

On December 14, 2006, Walter Duffy, M.D., saw plaintiff for her symptoms of depression and anxiety pursuant to Dr. Thompson's referral (Tr. 401). Dr. Duffy reported diagnoses of Major Depressive Affective Disorder and Generalized Anxiety Disorder and assigned a GAF of 54 (Tr. 402).

Plaintiff saw Amy Garwood, M.D., a rheumatologist, on December 21, 2006 (Tr. 411-14). Dr. Garwood reported that examination of the plaintiff showed she had full range of motion in her neck, no abnormalities in the hands, wrists, elbows, shoulders, hip, ankle, knee, heel, or foot, and "Fibromyalgia: many very clear tender points" (Tr. 409). Dr. Garwood diagnosed fibromyalgia, stating plaintiff "has clear evidence of

fibromyalgia by history and physical today." (Tr. 413). Dr. Garwood stated "[plaintiff's] regimen is quite good. . . . I did refer her for pilates strengthening . . . . Continuing emphasis on exercise, sleep and mood will be vital." (Tr. 413).

On or about January 4, 2007, plaintiff saw Stanley Carlock, Ed.D., for psychological testing and evaluation pursuant to Dr. Thompson's referral (Tr. 394). Plaintiff reported feeling the best she had since 1990, noting she was "doing fairly well physically with energy, and [she] fe[lt] good emotionally" despite stress at home (Tr. 394). Plaintiff reported that her medication helped with pain in her lower legs and arms, and some of her discomfort had completely gone away (Tr. 394). Plaintiff was administered the Cognistat and received scores within the average range of cognitive functioning (Tr. 395-96). Plaintiff was also administered the MCMI-III, and Dr. Carlock concluded from her test results that she did not experience a mental disorder or is experiencing a minimally severe disorder (Tr. 396-97). Dr. Carlock identified diagnoses of Dysthymic Disorder and Anxiety Disorder and assessed a GAF of 75 (Tr. 399). Dr. Carlock concluded patient's symptoms appeared substantial enough to warrant continued treatment with medication, but the severity of plaintiff's psychological diagnoses did not prohibit her from working (Tr. 400).

At the request of plaintiff's attorney, Dr. Thompson completed a medical questionnaire dated January 7, 2007 (Tr. 405-07). Question one asked, "Throughout the time you treated Mrs. Lewis, were her reports of the nature and severity of fibromyalgia, migraine headaches and chronic fatigue consistent with your medical findings and observation?" (Tr. 405). Dr. Thompson checked "yes" (Tr. 405). Question two asked, "Would the edema in her legs and chronic migraines and fibromyalgia pain limit Mrs. Lewis to sedentary work?" (Tr. 405). Dr. Thompson checked "yes" (Tr. 405). In response to question three, Dr. Thompson listed the following as plaintiff's diagnoses: chronic fibromyalgia, chronic fatigue secondary to fibromyalgia, migraine headaches (controlled), chronic anxiety, chronic edema of plaintiff's lower extremities, hypertension, sinusitis, and chronic depression (Tr. 405-406). Subparts to question three asked, given plaintiff's medical conditions, whether she would be able to work in several nursing occupations and the amount of time she would be able to work (Tr. 406). Dr. Thompson circled that plaintiff would be unable to work as an ER triage nurse or a visiting home health nurse and would be able to work 2-3 hours with frequent rest periods as a nurse reviewing medical records, an insurance nurse case manager, or a telephone "Ask-a-Nurse" position (Tr. 406). In response to question four, Dr. Thompson circled a response that indicated plaintiff would have the mental

acuity to work 2-3 hours with frequent rest periods due to the anxiety and pain medications she takes (Tr. 406-407).

**B. Plaintiff's reported daily activities and symptoms**

Plaintiff reported that she is able to care for her personal needs, cook easy type meals, and perform household chores (dishes, vacuuming, dusting, laundry, mopping the floor, mowing part of the yard, and pruning and weeding), drives a car about five days a week to run errands, and babysits her grandsons (ages 7 and 4 at the time of the hearing) two afternoons a week (Tr. 79-81).  Plaintiff claims she does not usually put on make-up or jewelry due to fatigue and increased pain, she has to take breaks while doing the household chores, and when she babysits her grandsons, she watches them as they nap, read, or play with their toys (Tr. 79-81).  She claims her symptoms of fatigue and pain are aggravated by increased activity, and she rests for two hours each afternoon (Tr. 79).  Plaintiff's other activities include reading the newspaper, playing the piano 20-30 minutes each day, and using the computer (Tr. 79-81).

Plaintiff claims she can stand 15 minutes at most at a time, can walk about 15 minutes, and can sit 15-45 minutes before symptoms increase (Tr. 81).  She claims her limitations are related to pain and fatigue, as well as "next day exaggeration" of symptoms (Tr. 81).  Plaintiff claims she has pain from "head to toes," her symptoms are always present, and she has about 4

-10-

"good days" per week where her symptoms would rate 4-5 on a 1-10 scale (Tr. 82).  As of June 2004, plaintiff reported she was taking several medications, which helped or worked fairly well for her conditions (Tr. 84-85).  Plaintiff claimed her medications had too many side effects to write, but she tolerated her medications "fairly well."  (Tr. 84).

**C. Procedural background**

On May 28, 2004, plaintiff applied for a period of disability and/or disability insurance benefits, alleging she became disabled on October 1, 1999, due to fibromyalgia, headaches, memory loss, sinusitis, chronic and constant pain, insomnia, restless leg syndrome, and anxiety, among other conditions (Tr. 56-60).  Plaintiff's application was denied initially and upon reconsideration.

Pursuant to plaintiff's request, a hearing was held before and Administrative Law Judge ("ALJ") on January 17, 2007 (Tr. 587-613).  Plaintiff was represented by counsel and testified at the hearing, and Michael McKeeman, a vocational expert, also testified.  In a decision dated May 24, 2007, the ALJ found plaintiff was not disabled at any time from the alleged onset date through the date last insured (Tr. 22).

In evaluating plaintiff's claim, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

§ 404.1520(a).[3]  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity ("SGA") during the period from her alleged onset date of October 1, 1999, through her date last insured ("DLI") of December 31, 2004 (Tr. 16).  At step two, the ALJ found plaintiff had the following severe medical impairments:  "chronic fatigue syndrome/fibromyalgia, [and] migraine headaches;" the ALJ found plaintiff did not have any severe mental impairments (Tr. 16).  At step three, the ALJ found plaintiff's impairments did not meet or equal a listed

---

[3] The SSA performs the following five-step sequential analysis to determine whether a claimant is disabled:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity.  The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities.  If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits.  If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work.  Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

impairment (Tr. 17). At step four, the ALJ found that through the DLI, plaintiff had the residual functional capacity ("RFC") to

> perform light work, in that she could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for about 6 hours in an 8 hour workday and sit for about 6 hours in an 8 hour workday, and must do work inside, do only occasional climbing, balancing, stooping, kneeling, crouching and/or crawling and must avoid exposure to heat, cold, vibrations, fumes, dust, gases and hazards such as dangerous equipment and machinery.

(Tr. 18). The ALJ found that based on her RFC, plaintiff was unable to perform her past relevant work as a registered nurse (Tr. 20). However, at step five, the ALJ found plaintiff was able to perform other light and sedentary jobs that existed in significant numbers in the national economy (Tr. 20-21). The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision stands as the final decision of the Commissioner (Tr. 4-7).

## II. STANDARD OF REVIEW

The Court reviews the record ". . . to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (quoting *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)). "Substantial evidence is less than

a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Id.*  "[The Court] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."  *Id.* (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

### III. DISCUSSION

On appeal, plaintiff asserts four primary arguments: (1) the ALJ applied the incorrect legal standard when determining plaintiff's RFC; (2) the ALJ's credibility assessment is not supported by substantial evidence; (3) the ALJ's RFC determination is not supported by substantial evidence; and (4) the ALJ's finding that plaintiff can perform other work is not supported by substantial evidence.  Because the Court finds substantial evidence does not support the ALJ's credibility findings, the Court does not address that last two arguments.

**A. Standard applied in determining plaintiff's RFC**

RFC is the most a claimant can do despite physical and mental limitations caused by her impairments, including any related symptoms.  20 C.F.R. § 404.1545(a).  "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule."  S.S.R. 96-8p, 1996 WL 374184,

-14-

at *2 (Soc. Sec. Admin. July 2, 1996). "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).

Plaintiff claims the ALJ failed to apply the "regular and continuing" standard when assessing her RFC. The Court is satisfied that the ALJ considered the applicable legal standards. The ALJ did not use the "regular and continuing" language in her opinion, but she noted that an individual's RFC "is her ability to do physical and mental work activities on a *سustained* basis despite limitations from her impairments" (Tr. 15)(emphasis added), cited 20 C.F.R. § 404.1545, which sets forth the "regular and continuing" standard, and described plaintiff's RFC in terms of the amount of time plaintiff could sit, stand, and walk in an 8-hour day. Thus, the Court does not find that the ALJ committed any legal error.

**B. Credibility assessment**

An ALJ's credibility findings must be supported by substantial evidence. *Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir. 1992). "In analyzing a claimant's subjective complaints of pain, an ALJ must examine: '(1) the claimant's

-15-

daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.'"  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  If the ALJ gives a "good" reason for discrediting the claimant that is supported by the record, the Court will defer to the ALJ's judgment.  *See id.*

Plaintiff testified that she experiences headaches, pain, fatigue/loss of energy, and cramping/burning/stiffness in her hands, which prevent her from being able to work full-time.  The ALJ found that plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms were "not entirely credible."  The ALJ proceeded to find that despite the credible limitations imposed by plaintiff's symptoms, plaintiff could perform light work with some restrictions.

The ALJ's credibility assessment is not supported by substantial evidence on the record as a whole.  First, plaintiff's complaints of pain and fatigue are consistent with the objective medical evidence, as examinations by Dr. McPherson and Dr. Garwood revealed multiple trigger points and tender spots, and both physicians, in addition to plaintiff's treating

physician, diagnosed plaintiff with fibromyalgia.  Plaintiff's complaints are also consistent with opinion evidence in the record.  Dr. McPherson found that plaintiff's complaints of pain were consistent with fibromyalgia, and Dr. Thompson's responses to a medical questionnaire indicated that plaintiff's reports of the nature and severity of her conditions were consistent with his findings and observations during the course of treating the plaintiff.  The ALJ did not specifically address or discredit these opinions.  Instead, the ALJ accorded weight to Dr. Hohensee's opinion that plaintiff's complaints were only "partially credible," and plaintiff could perform light work with some restrictions.  For reasons identified below, Dr. Hohensee's opinions do not constitute substantial evidence.

Further, it is not clear that the ALJ considered all of the *Polaski* factors before discrediting plaintiff's complaints.  The ALJ did not specifically discuss the duration, frequency and intensity of plaintiff's pain and fatigue, the effectiveness and side effects of her medication, or any aggravating factors.  Plaintiff claims that one of the primary reasons she is unable to perform full-time work is that increased activity aggravates her pain and fatigue.  The ALJ did not explicitly address whether this claim was consistent with other evidence in the record.

The ALJ identified several reasons for discrediting plaintiff, but these reasons are not supported by the record.

-17-

The ALJ noted that plaintiff's fibromyalgia has improved, but the ALJ did not explain how plaintiff's improvement was inconsistent with her statements regarding the symptoms she experienced in 2004, or her claim that she remains unable to perform full-time work despite her improvement.  The ALJ noted that plaintiff has not had surgery for her conditions, but nothing in the record indicates that surgery would be appropriate for fibromyalgia.  The ALJ noted that plaintiff's medical records did not show signs of muscle atrophy, but again, the ALJ did not explain how this fact was inconsistent with plaintiff's statements of disabling fibromyalgia pain and fatigue.  The ALJ also found that plaintiff's daily activities were inconsistent with her claimed limitations.  The record demonstrates that plaintiff is capable of performing several daily activities, including household work, driving to run errands, and caring for her grandchildren two afternoons a week, but plaintiff claims that she takes frequent breaks while performing housework, watches her grandchildren sleep and play with toys, and rests for two hours each afternoon.  These activities are not necessarily inconsistent with her claim that she is unable to perform full-time work, let alone full-time light work, which requires the ability to stand/walk for 6-hours out of an 8-hour day.  The Eighth Circuit has found that the ability to perform daily activities similar to plaintiff's is not inconsistent with the inability to perform full-time employment.

*See Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998); *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *Ricketts v. Sec. of Health and Human Servs.*, 902 F.2d 661, 663 (8th Cir. 1990).

The ALJ also discredited plaintiff because she did not see a rheumatologist earlier, and Dr. Garwood did not give plaintiff restrictions. The record indicates that plaintiff saw Dr. Thompson regularly for treatment, was on multiple medications, and that Dr. Garwood confirmed Dr. Thompson's diagnosis of fibromyalgia and indicated that his treatment was appropriate. Under these circumstances, plaintiff's failure to see Dr. Garwood sooner does not constitute substantial evidence for discrediting plaintiff's complaints. Further, Dr. Garwood's silence with respect to plaintiff's functional limitations does not support the ALJ's credibility finding because Dr. Garwood was not asked to express an opinion about plaintiff's functional limitations. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).

Dr. Hohensee's findings support the ALJ's credibility assessment, but Dr. Hohensee did not examine the plaintiff and only performed a review of her file. Generally, opinions of doctors who have not examined the claimant do not constitute substantial evidence. *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Moreover, Dr. Hohensee's basis for discrediting

plaintiff is not supported by the record.  Dr. Hohensee partially discredited plaintiff due to her daily activities, but like the ALJ, he did not explain how plaintiff's daily activities were inconsistent with her claimed limitations.  Dr. Hohensee also discredited plaintiff because he found that her allegations of poor memory were not supported by the record.  While the record supports Dr. Hohensee's opinion that plaintiff does not suffer any memory problems, this fact does not constitute substantial evidence on the record as a whole for discrediting plaintiff's statements regarding her pain and fatigue.

Based on the foregoing, the ALJ's credibility assessment is not supported by substantial evidence.  Further analysis of plaintiff's claim is necessary to determine whether she is capable of full-time work.  Accordingly, the Court will remand the matter for further findings.

## IV. CONCLUSION

The Commissioner's decision is vacated, and this matter is remanded for further findings consistent with this opinion.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 2nd day of September, 2010.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court